UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**THOMAS GILLUM**                                                                          **CIVIL ACTION**

**VERSUS**

**ICF EMERGENCY MANAGEMENT**                                          **NO. 08-314-C-M2**
**SERVICES, L.L.C.**

## RULING & ORDER

This matter is before the Court on the Motion to Compel (R. Doc. 31) filed by plaintiff, Thomas Gillum ("Gillum"). Defendant, ICF Emergency Management Services, L.L.C. ("ICF"), has filed an opposition (R. Doc. 37) to Gillum's motion, in response to which Gillum has filed a reply brief (R. Doc. 41).

## FACTS & PROCEDURAL BACKGROUND

Gillum filed this suit against ICF on May 12, 2008. In his original petition and amended complaint, he asserts age discrimination and pay disparity claims pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA") and Louisiana's Employment Discrimination Law, La. R.S. 23:301, *et seq.* ("LEDL"). He also sets forth claims for violation of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* and Louisiana tort law pursuant to La. C.C. art. 2315, *et seq.* As a result of ICF's alleged discriminatory conduct, Gillum contends that he is entitled to compensatory and punitive damages, liquidated damages, lost wages and benefits, attorney's fees, and costs.[1]

---

[1] According to the allegations in Gillum's present motion, he was hired by ICF as a Rental Rehabilitation Specialist in the Small Rental Program for the Louisiana Road Home Program effective February 5, 2007. He contends that he was hired to survey Hurricane Katrina damaged rental property consisting of 1-4 rental units, assist landlords, supervise reconstruction, conduct final inspections of affected property, and coordinate the reimbursement efforts for Katrina victims. He worked primarily out of

1

On October 2, 2008, Gillum propounded his first set of Interrogatories and Requests for Production of Documents to ICF. ICF responded to those discovery requests on November 4, 2008. Specifically at issue in the present motion is ICF's objections to Request for Production No. 4. In that request, Gillum asked that ICF produce "a copy of any and all complaints of discrimination, harassment and retaliation against ICF." *See*, Exhibit "A" to Gillum's motion. ICF objected to that request "to the extent it is overbroad in its temporal, geographic and substantive scope and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence." *See*, Exhibit "B" to Gillum's motion.

According to Gillum, his counsel attempted to resolve ICF's objections without court intervention by conducting a Rule 37(d) telephone conference on May 1, 2009. By letter dated May 1, 2009, Gillum's counsel narrowed the scope of Request for Production No. 4 by modifying the request to ask ICF for "all employee complaints of discrimination, harassment, and retaliation based on age for a period of five (5) years." *See*, Exhibit "C" to Gillum's motion. ICF's counsel, however, rejected the modified request and continued to object to Request for Production No. 4.

---

the housing Assistance Center in Slidell, Louisiana. At the time he was hired by ICF, he was fifty-eight (58) years of age and allegedly had over thirty (30) years of claims adjusting and construction experience. He was employed by ICF at a rate of $50,000.00 per year for a period of three (3) years. He contends that he was advised that such salary was the "top" or best salary that would be and could be paid to Rehabilitation Specialists.

Gillum alleges that, after he was hired, he was sent to repeated "trainings" but was never placed in the field to begin the surveying process. He also contends that, as more Rehabilitation Specialists were hired in the same job classification, he discovered that, of the fourteen (14) total specialists, three (3) of them, including himself were over the age of fifty-five (55) years. He further discovered, in April 2007, that ICF had hired much younger Rehabilitation Specialists at rates of pay "grossly exceeding" his pay by $7,500-$25,000 more per year. Gillum contends that he reported the gross pay disparity to ICF. Gillum ultimately resigned on June 15, 2007.

On May 4, 2009, ICF's counsel sent Gillum's counsel a letter explaining its continued objections to Gillum's modified Request for Production No. 4.  *See*, Exhibit "D" to Gillum's motion.  In that letter, ICF's counsel explained that plaintiff's proposed modification did not resolve ICF's objections because the request continues to seek evidence of alleged discrimination against non-similarly situated employees. ICF's counsel noted that, although Gillum contends that discovery of prior complaints of discrimination, harassment, and retaliation are permitted to prove discriminatory motive and intent, Federal Rule of Evidence 404(b) nevertheless requires similarity between the proffered evidence and the acts at issue in this lawsuit, or the other acts of discrimination are irrelevant.  As support for such contention, ICF's counsel cited the cases of *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 358 (5th Cir. 1996) and *Wyvill v. United Cos. Life Insurance Co.*, 212 F.3d 296 (5th Cir. 2000), where it was held that, under FRE 404(b), the proffered evidence must be regarding the same type of discrimination and by superiors who directly made or participated in the employment decisions complained of in the present suit.  ICF further noted that, although *Kelly* addresses the issue of admissibility of other acts of discrimination at trial, the same analysis applies in the discovery context.  Specifically, ICF's counsel referred to a decision out of the Eastern District of Louisiana, *Marchese v. Sec'y, Dept. of the Interior*, 2004 WL 2297465 (E.D. La. 2004), where it was held that other acts of discrimination by an employer are discoverable only if they involve the same form of discrimination, the same department where the plaintiff worked, and employees who are "similarly situated" to the plaintiff. According to ICF's counsel's May 4, 2009 letter, ICF is amenable to responding to Gillum's Request for Production No. 4 "as limited to formal charges or lawsuits, and internal complaints to ICF Human Resources, alleging age discrimination or harassment made by

3

ICF employees working in the Small Rental Program." *Id.*

Because of his disagreement with the position taken in the May 4, 2009 letter of ICF's counsel, Gillum filed the present motion on June 1, 2009. In his motion, Gillum argues that, because there has been no proffer of evidence regarding other acts of discrimination made at this juncture, ICF's reliance upon FRE 404(b), *Kelly*, and *Wyvill* is misplaced and unpersuasive. Through his motion, Gillum seeks to have ICF fully respond to his modified Request for Production No. 4 by producing "a copy of any and all employee complaints of discrimination, harassment, and retaliation based on age for a period of five (5) years" by July 2, 2009 or a date set by the Court. He further limits his request to employee complaints arising out of ICF's "Southern Region and Virginia offices." Finally, Gillum seeks an award of the attorney's fees and costs that he incurred in bringing the present motion as allowed by Fed. R. Civ. P. 37.

## **LAW & ANALYSIS**

The starting point for analysis of the present dispute is the basic "relevancy" standard that governs discovery under the Federal Rules of Civil Procedure. That standard is that, generally, "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information[, however,] need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). For purposes of discovery, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. " *Oppenhiemer Fund, Inc. v.* Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Discovery under Rule 26, however, is not without limits. A court can limit discovery

4

if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

In an age discrimination case, such as the present one, a plaintiff must demonstrate that he/she is: (1) a member of a protected class; (2) qualified for the position; (3) subject to an adverse employment action; and (4) treated differently from others "similarly situated." *Jones v. Wal-Mart Stores, Inc.*, 2009 WL 27475 (5th Cir. 2009). An employee is considered "similarly situated" if he or she worked under "nearly identical" circumstances. *Id.*, citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). If the plaintiff sets forth the above *prima facie* showing, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If the employer meets that burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. *Id.*

The U.S. Supreme Court has recognized that evidence relevant to a showing of pretext may include facts regarding the employer's treatment of the complainant during his employment, as well as the employer's general policy and practice with respect to employment of the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Thus, a plaintiff may assert a "pattern of discrimination" theory by showing other acts of discrimination by the employer. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002). However, courts must set reasonable

5

boundaries on the type of discovery permissible when such a "pattern of discrimination" theory is propounded, and the discovery must be tailored to the particular claim of disparate treatment. *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 61-63 (D.N.J. 1985); *Syed v. Director, F.B.I.*, 1990 WL 259734, *3 (E.D.Pa. 1991). In employment discrimination cases, discovery is usually limited to information about employees in the same department or office absent a showing of a more particularized need for, and the likely relevance of, broader information. *See, Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 620 (S.D. Ind. 2002), and cases cited therein.

Courts within the Fifth Circuit Court of Appeals have typically limited such discovery in terms of time, substantive scope, and geographical scope. For example, in *Lovoi v. Apple One Employment Services*, 2000 WL 1863522 (E.D.La. 2000), a plaintiff who sued her former employer for age discrimination under the ADEA, contending that it was the defendant's practice not to hire anyone over the age of forty (40), propounded discovery requests to her employer seeking the number of individuals over the age of forty (40) who had previously been hired by or were currently employed by the defendant. The Eastern District of Louisiana found such evidence relevant to show the defendant's motive, intent or purpose in that disparate treatment case but concluded that the production should be limited in time and scope to offices owned or operated by the defendant within the State of Louisiana for the five (5) years prior to the alleged discrimination. *See, Lovoi*, at *2, citing *Cormier v. PPG Industries, Inc.*, 452 F.Supp. 594 (W.D.La. 1978)(discovery of statistical evidence properly limited to period commencing five (5) years prior to effective date of the plaintiff's claim).

The Eastern District of Louisiana set further limitations on an employment

6

discrimination plaintiff's discovery requests concerning other employees in *Franklin v. Living Centers-East, Inc.*, 1999 WL 615171 (E.D.La. 1999). In *Franklin*, the plaintiff sued her former employer, alleging that she was fired because she was pregnant. In discovery, she requested, among other things, a list of all employees of her former employer by job title, gender, and job classification; the salary histories of all other employees who were certified nursing assistants (CNAs) like the plaintiff; the personnel files of all current and former CNA employees; and all salary histories and performance evaluations of all CNAs employed by the defendant. Although the plaintiff had not specifically alleged a pattern or history of gender discrimination in her complaint, the Eastern District found that, if she could prove such a pattern, it would be relevant to show a climate or atmosphere of bias that might convince the factfinder that her employer's nondiscriminatory explanation for terminating her was pretextual. The court noted, however, that plaintiff's case was a "simple wrongful termination case" and that her allegations related solely to the actions of her immediate supervisors at one location. The Eastern District explained that courts have recognized that Title VII plaintiffs "do not have an unlimited ability to delve into their employers' policy and personnel records, even when they have alleged a pattern of discrimination" and that the needs and rights of both the plaintiff and the defendant are to be balanced. *Id.*, at *2, citing *Scales v. J.C. Bradford & Co.*, 925 F2d 901, 906 (6th Cir. 1991)(citing *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983)).

In deciding that the plaintiff's requests needed to be limited in *Franklin*, the Eastern District relied upon *Childers v. Slater*, 1998 WL 429849, at *4-5 (D.D.C. 1998), where a plaintiff's request for information about all discrimination actions filed against an entire government agency had been held to "sweep[] too broadly," and the discovery was limited

to the relevant time period, the particular type of discrimination alleged in the complaint, and the divisions where the plaintiff and her supervisor worked.  In setting limitations on discovery, the Eastern District also relied upon the Fifth Circuit Court of Appeals' decision in *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 357-58 (5th Cir. 1995).  In *Kelly*, the Fifth Circuit approved an evidentiary ruling that precluded an employment discrimination plaintiff from introducing evidence at trial of discriminatory acts and utterances of the plaintiff's supervisor directed toward other employees, when those acts and remarks were based upon different types of discrimination than the plaintiff was alleging.  The Fifth Circuit, in *Kelly*, determined that, despite the "liberal" standard for relevance at trial and the potential for abuse of discretion when courts limit "a plaintiff's ability to show the atmosphere in which the plaintiff [ ] operated," the proffered evidence concerning types of discrimination other than the disability discrimination alleged by the plaintiff was irrelevant. *Franklin*, at *2, quoting *Kelly*, at 357, 358, 360.  Even though *Kelly* related to the admissibility of evidence at trial, the Eastern District nevertheless relied upon it in the discovery context in *Franklin* to limit the plaintiff's discovery requests.  Noting that it is "well established that only 'similarly situated' employees are relevant to a claim of disparate treatment," the Eastern District, in *Franklin*, limited the plaintiff's discovery requests to other employees who were in the same job classification as the plaintiff, *i.e.*, other CNAs, and who were pregnant during their employment at the particular healthcare center where the plaintiff worked, Metairie Healthcare Center, as opposed to all those employed by the

defendant, which operated more than thirty hundred and fifty (350) nursing homes.[2]

Courts outside of the Fifth Circuit Court of Appeals have imposed similar limitations upon discovery in discrimination and disparate treatment cases.  For example, in *Dixon v. Ashcroft*, 2001 WL 1910055 (W.D.Tenn. 2001), the plaintiff, a black female employee of Federal Correctional Institution of Memphis ("FCI Memphis") filed suit against the Federal Bureau of Prisons under Title VII, alleging that she had been the victim of racial and sexual discrimination in the accounting department at FCI Memphis since November 1, 1996 and of retaliation as a result of her filing an EEOC complaint on February 18, 1997.  Through discovery, the plaintiff requested that the Bureau of Prisons provide all previous claims and/or charges, including informal complaints, for race and sex discrimination and for retaliation filed by current and former employees of the Federal Bureau of Prisons.  She sought prior claims and/or charges relating to race discrimination from 1993 to the present (which was 2001 at the time of suit), and those relating to sex discrimination and retaliation for 1996 to the present (2001).

The court found that, to the extent the interrogatories sought information for time

---

[2] The Eastern District of Louisiana similarly limited discovery requests in an employment discrimination case in *Williams v. Chrysler Financial Corp.*, 1999 WL 280437 (E.D.La. 1999).  There, the Eastern District limited the plaintiff's discovery requests to the defendant's New Orleans Zone office, to the time period from September 1997 (six months before the plaintiff's employment was terminated and the approximate time when the management team that terminated him began working at the Zone office) until September 1998 (six months after his termination) and to possible race discrimination.  The court allowed such discovery even though the plaintiff had not explicitly alleged a pattern or history of racial discrimination in his petition and amended complaint because, if the plaintiff could prove such a pattern, it could be relevant to showing a climate or atmosphere of bias that might convince the fact finder that the defendant's nondiscriminatory explanation for firing the plaintiff was untrue.  *Id.*  The court also agreed with the defendant that only "similarly situated" employees were relevant to the plaintiff's claim of disparate treatment and therefore limited the plaintiff's discovery requests to employees who were adjusters, the same job classification as the plaintiff.  *See also, Marchese v. Secretary, Dept. of the Interior*, 2004 WL 2297465 (E.D.La. 2004)(In a case of allegations of discriminatory failure to promote, retaliation and Equal Pay Act violations, the Eastern District limited the plaintiff's ability to discover other claims of discrimination by the defendant to the (a) same form of discrimination, (b) same department or agency where plaintiff worked, and (c) a reasonable time before and after the discrimination complained of).

periods prior to January 1, 1996, they were overly broad and irrelevant. It further found that, to the extent the interrogatories sought information concerning facilities other than FCI Memphis, the information was unrelated to the plaintiff's allegations and therefore irrelevant. The court, however, agreed that information concerning prior charges and complaints of discrimination based upon race, sex and retaliation were relevant to plaintiff's claims of employment discrimination on those grounds, noting that an employee may attempt to prove intentional discrimination by presenting credible, direct evidence of discriminatory intent because one element of such a claim is that the person responsible for the discriminatory decision was (1) predisposed to discriminate against persons in the protected class, and (b) actually acted on that predisposition in the . . . decision." *Id.* Thus, the court concluded that "[a] plaintiff's discovery of past charges of discrimination against the same protected class of which he or she is a member could lead to admissible evidence of a predisposition to discriminate against the protected class." *Id.*, *2. The court, however, limited the plaintiff's request:  (1) to the specific types of discrimination alleged (*i.e.*, prior race and sex discrimination and retaliation complaints); (2) to employees "similarly situated" to the plaintiff (*i.e.*, prior race discrimination complaints filed by current and former African American employees of FCI Memphis (rather than the Bureau of Prisons as a whole), prior sex discrimination complaints filed by current and former female employees of FCI Memphis, and prior retaliation complaints filed by current and former employees of FCI Memphis)); (3) that were filed against the same alleged participants in the discrimination (*i.e.*, the same supervisors/managers that discriminated against the plaintiff); and (4) for the relevant time period, (*i.e.*, approximately five (5) years, January 1, 1996 to the present, 2001). *Id.* With such limitations imposed, the court found  that it had struck an appropriate

balance between the needs and rights of the plaintiff to obtain the requested information versus the burden upon the defendant in producing the information.  The court also noted that, in order to protect the privacy of past discrimination complainants, the defendant could withhold the names and addresses of the complainants and any other identifying information unless already of public record.  *Id.*

Similarly, in *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615 (S.D.Ind. 2002), the plaintiff, a salaried, non-bargaining unit employee of DaimlerChrysler sued that corporation for age discrimination under the ADEA, for subjecting him to a hostile work environment, and for retaliating against him for filing charges of discrimination with the EEOC.  He had worked as a product engineer at the Indiana Transmission Plant ("ITP") of DaimlerChrysler since 1996 under the supervision of Barry Fiscus.  In February 2001, the plaintiff served discovery requests upon DaimlerChrysler seeking information relating to employees who not only worked at ITP but also at the Kokomo Casting Plant (KCP) and the Kokomo Transmission Plant (KTP).  DaimlerChrysler objected and provided information relating only to salaried, non-bargaining unit employees at the ITP and under the supervision of Fiscus. *Id.*, at 619.

The court agreed with DaimlerChrysler that plaintiff's requests for information concerning other employees should be limited to that about employees in the same department or office, absent a showing of a "more particularized need for, and the likely relevance of, broader information." *Id.*, at 620.[3]  The court was unpersuaded that the plaintiff had demonstrated a "particularized need" for broader discovery outside of the ITP, and it noted that allowing discovery outside of the ITP would permit the plaintiff to engage in a "fishing expedition" since such information would be irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. *Id.*

The court also found that the plaintiff's attempt to extend discovery to include both bargaining unit and non-bargaining unit employees was overbroad and not reasonably calculated to lead to the discovery of admissible evidence since the employees outside of the plaintiff's classification were not "similarly situated" to him for purposes of his ADEA disparate treatment claim. *Id.*, 620-21.[4]  Finally, the court found that the plaintiff had failed to articulate a "particularized need" for information about employees beyond the supervision of his own supervisor, Fiscus.  The court noted that, in the event the plaintiff demonstrated,

---

[3] *See also, Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D.Kan. 1995)(limiting discovery to plaintiff's "employing unit"); *Gheesling v. Chater*, 162 F.R.D. 649, 650 (D.Kan. 1995)(same); *Miller v. Yuasa-Exide, Inc.*, 1995 WL 606807, at *1 (D.Kan. 1995)(same); *Earley v. Champion International Corp.*, 907 F.2d 1077, 1084-85 (11th Cir. 1990)(same); *Laurenzano v. Lehigh Valley Hosp., Inc.*, 2001 WL 849713, *2 (E.D.Pa. 2001("[b]ecause [the interrogatory] seeks information regarding complaints of the same type at issue in this suit, and against the same department, it is neither irrelevant nor overly broad"); *Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 906 (6th Cir. 1991)(court limited discovery of employer's payroll records to employees in same department in which plaintiff employee worked).

[4] *See also, Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002), citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)("[t]o meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects"); *Blackwell v. Bob Evans Farms, Inc.*, 1996 WL 406654, *4 (N.D.Ill. 1996)(in order to show that plaintiff was similarly situated, he is required to prove that all of the relevant aspects of his employment situation were "nearly identical to those of [the comparator's] employment situation); *Murphy v. Village of Hoffman Estates*, 1999 WL 160305, *6 (N.D.Ill. 1999)(the "similarly situated" requirement limits the court to consideration of comparable employees).

either through additional discovery or otherwise, that other supervisors played a role in his termination, broader discovery might be allowed.  However, because the plaintiff had only offered "his own self-serving, conclusory allegations to bolster the suggestion that other individuals were involved in the decision to terminate," such "expansive discovery" would not be allowed.  *Id.,* 621.[5]

---

[5] *See also, Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 619 (D.D.C. 1983)(holding that, in Title VII cases involving individualized claims of discriminatory treatment, discovery should be restricted "to the practices at issue in the case, applied to employees in similar circumstances to determine if the employer treats all of its employees under those circumstances in the same manner, or whether it treats employees similarly circumstanced differently and there is some basis for concluding that the difference in treatment is predicated on race, sex, or some other prohibited grounds of unlawful discrimination"); *Sommerfield v. City of Chicago,* 2009 WL 1270088 (N.D. Ill. 2009)(In a Title VII action against the City of Chicago, in which a city police department employee alleged that he was subjected to harassment because he was Jewish and that he was retaliated against for filing a complaint, the court held that the plaintiff's request for "every complaint of discrimination by anyone in the Chicago Police Department and every suspension of any employee of the Chicago Police Department in the last seven years" was "manifestly overbroad" since it was not directed at obtaining information about "similarly situated" individuals employed in the same police district as the plaintiff.  According to the court, demonstrating that two (2) or more employees are "similarly situated," for purposes of a discrimination action, generally requires a showing that the employees dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.  The court explained that the plaintiff only had to show that "similarly situated" employees were treated more favorably than he was.  Thus, it was irrelevant whether employees who were not "similarly situated" were disciplined less harshly (or not at all) than the plaintiff.  The plaintiff had been provided several years worth of discrimination and retaliation complaints by police officers in his district against the sergeant he claimed was his oppressor, and the court found he was "entitled to no more"); *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309 (7th Cir. 2003)(the plaintiff wanted company-wide personnel files on all who had been terminated, laid-off, or retired; district court limited discovery to the relevant corporate department, "similarly situated" employees, time period, and decisionmakers); *Wilson v. Kautex*, 2008 WL 162645 (N.D.Ind. 2008)(holding that plaintiff in employment discrimination suit was entitled to information concerning prior racial discrimination lawsuits or employee complaints pertaining to the Kautex plant in Avilla, Indiana, where the plaintiff worked, and that had been filed in the five (5) years preceding the alleged discriminatory act.  Although the plaintiff contended that she needed information from beyond that plant to prove a pattern of racial abuse and discrimination, the court found that the plaintiff had not shown a "particularized need" for company-wide information to pursue her individual claim and that discovery must be tailored to the claim of disparate treatment); *Davis v. Precoat Metals*, 2002 WL 1759828, *2 (N.D.Ill. 2002)(finding the plaintiff's requests for information sufficiently tailored where they "limited their requests to discrimination complaints, charges, and grievances filed by employees who worked at the same plant as the plaintiffs"); *Lute v. Consol. Freightways, Inc.,* 1992 WL 252342, *1 (N.D.Ind. 1992)(limiting discovery to the facility where the plaintiff worked); *Tomanovich v. Glen*, 2002 WL 1858795, *2 (S.D.Ind. 2002)(finding that a "time period of five years is reasonable and appropriate" and placing the five year limit on an interrogatory requesting information about the defendant's previous charges of race, national origin, and age discrimination); *Byers v. Ill. State Police*, 2002 WL 1264004, *2-*3 (N.D.Ill. 2002)(limiting discovery to five years); *Leibforth v. Belvidere Nat'l Bank*, 2001 WL 649596, *2 (N.D.Ill. 2001)(limiting interrogatory responses to "five years preceding the alleged discriminatory act").

Based upon the above jurisprudence, it appears that Gillum's discovery request at issue should be limited as follows: (1) to claims of age discrimination and disparate treatment (the specific type of discrimination alleged in this case); (2) asserted by employees of the Small Rental Program and the Homeowner Program of the Louisiana Road Home Program for which Gillum worked (employees "similarly situated" to Gillum); (3) for the past five (5) years. Because Gillum has not asserted a claim of retaliation or harassment based upon his age in this lawsuit, he is not entitled to information concerning prior retaliation and harassment complaints against ICF. However, in his reply memorandum, Gillum has demonstrated that employees of the Homeowner Program of the Louisiana Road Home Program have sufficiently similar job functions to those in the Small Rental Program to be considered "similarly situated" for purposes of plaintiff's disparate treatment claim, and ICF has not come forward with any evidence or argument to refute that demonstration. Accordingly, Gillum will be permitted to obtain information concerning any prior complaints based upon age discrimination and disparate treatment filed by those Homeowner Program employees.[6] Although ICF contends that Gillum's discovery should be limited to complaints regarding the same supervisors who set or had input into the

---

[6] In his reply memorandum, Gillum explains that the Louisiana Road Home Program consists of two (2) sections: the Small Rental Program and the Homeowner Program. He refers to the testimony of Vanessa Brower, the Director and Project Manager for the Small Rental Program, wherein she indicated that, in late 2007, ICF's Change Control Board, the Louisiana Recovery Authority, and the Office of Community Development implemented a policy decision to eliminate the rehabilitation specialist positions and replace them with "independent contractors" from the Homeowner Program. Gillum also refers to certain exhibits to the contract between ICF and the State of Louisiana, which indicate that the "Statement of Work and Scope of Services" for both the Homeowner and Small Rental Program was the same for Phase 1 of the program and that "the deliverables" for the two programs were similar. Based upon that evidence, it appears that employees working in the Homeowner Program of Louisiana's Road Home Program have sufficient similarities in terms of job classification to allow discovery of any prior complaints of age discrimination/disparate treatment that they may have filed in the past five (5) years.

setting of his salary,[7] the Court finds that limitation to be too restrictive since employees within the Homeowner Program of Louisiana's Road Home Program likely had their salaries set by other supervisors who worked within that section.[8]  Based upon the Court's review of relevant jurisprudence, it appears that the three (3) primary limitations placed upon discovery of prior complaints in discrimination/disparate treatment cases are:  (1) limitations to the same form of discrimination; (2) limitation to the same department, agency, facility, or state where the plaintiff worked; and (3) a reasonable time limitation before and after the discrimination complained of.[9]  Those standard limitations are satisfied if the above modifications to Gillum's discovery request are implemented.

Finally, the Court finds that Gillum's request for complaints by all ICF employees in the "Southern Region and the Virginia office" is overly broad.  Gillum asserts no particular argument in support of his request for information from ICF's offices in the entire "Southern

---

[7] ICF contends that three (3) individuals, Denise Maxwell, Vanessa Brower and Bob Santucci, set or had input into the setting of Gillum's salary.  It relies upon Gillum's deposition testimony, wherein he testified that he believes Denise Maxwell set his salary at $50,000.00 after consulting with the Director of the Road Home Program's Small Rental Program, Vanessa Brower.  *See,* Deposition of Gillum, pp. 151-52, R. Doc. 36-7; Deposition of Vanessa Brower, pp. 62-65, R. Doc. 36-4.  ICF also points out that Robert Santucci, a contract employee who worked on the Small Rental Program, testified that he recommended that ICF should hire rehab specialists at a salary higher than $50,000.00.

[8] If age discriminatory animus existed within the Small Rental Program and the similar Homeowner Program in the setting of compensation/salaries, Gillum is entitled to discover that information, regardless of whether the salaries were set by the same supervisor.  This situation is distinguishable from the scenario in an age discrimination/hostile work environment case where a plaintiff is trying to prove that a particular supervisor engaged in a pattern of discriminating against and harassing employees, in which case evidence relating only to that plaintiff's supervisor would be relevant.  Although plaintiff's discovery in this case should be restricted to employees who were "similarly situated" to him in terms of job classification, the Court does not find it necessary that his discovery also be limited to the particular supervisors that set his salary.

[9] *Marchese v. Secretary, Dept. of the Interior*, 2004 WL 2297465, *2 (E.D.La. 2004), citing *Mitchell v. National R.R. Passenger Corp.*, 208 F.R.D. 455, 460 (D.D.C. 2002)("It is well established that other claims of discrimination against a defendant are discoverable if limited to the (a) same form of discrimination, (b) the same department or agency where plaintiff worked, and (c) a reasonable time before and after the discrimination complained of").

region." Because that description is vague, setting forth no express limitations upon the states and offices to which Gillum is referring, and because there is no evidence before the Court indicating that the offices throughout the "Southern Region" have employees performing substantially the same work and duties as those within the Small Rental and Homeowner Programs of the Louisiana Road Home Program, allowing Gillum discovery into complaints asserted by employees of those offices would essentially open up a "fishing expedition," which is impermissible.

Moreover, although Gillum contends that he is entitled to complaints of employees from the "Virginia" office because ICF's corporate headquarters is located in Fairfax, Virginia, because Gillum has contacted the corporate headquarters in Virginia "regarding various employment issues," because his pay check is sent to him from the Virginia headquarters, and because ICF employees can report grievances/complaints of discrimination directly to their superiors and/or to the Human Resources Department in Virginia, the Court does not find those connections to the Virginia office to be sufficient to warrant discovery of all age discrimination and disparate treatment complaints filed by employees of that office. Again, Gillum has not demonstrated that employees of the ICF office in Virginia are in any way "similarly situated" to him in terms of job classification and duties. As such, he has not demonstrated a "particularized need" for discovery of their complaints/grievances. As mentioned above, what is relevant to Gillum's discrimination/disparate treatment claims (or reasonably calculated to lead to the discovery of admissible evidence regarding those claims) is information demonstrating that other employees "similarly situated" to him were treated differently in terms of salary because of their age. Without a demonstration that the employees in the "Southern region and

Virginia" offices performed job functions at all similar to Gillum, the Court cannot find the requested information to be sufficiently relevant to this case to warrant its discovery.[10] Gillum should have sufficient information to establish a pattern of age discrimination/disparate treatment, if one exists, through his access to the complaints/grievances filed by employees of Louisiana's Road Home Program.

Finally, the limitations imposed by the Court will not deprive Gillum of receiving information about any age discrimination and disparate treatment complaints asserted by employees of the Small Rental and Homeowner Programs of the Louisiana Road Home Program, simply because the complaints were reported directly to the Virginia office, as opposed to being reported to a supervisor within the Louisiana Road Home Program. The discovery request, as modified by the Court, requires ICF to turn over all age discrimination and disparate treatment complaints by employees of the Small Rental and Homeowner Program of the Louisiana Road Home Program, regardless of whether those complaints were made to the employee's supervisor within that program or to the Human Resources Department at the Virginia headquarters office, since ICF's policy allows employees to report complaints and grievances by either of those means. Accordingly, Gillum will not be denied that relevant information simply because the Court will not permit him to discover the age discrimination complaints filed by employees of the Virginia office itself. To protect the privacy of the employees who filed the complaints that will be produced, such

---

[10] The fact that ICF's handbook states that, in order to be valid and binding, all commitments by agents, employees, or officers of ICF International "for employment for any specified duration" must be approved by an executive officer of ICF International (who would purportedly be headquartered in Virginia) does not indicate that decisions regarding Gillum's salary were made in the Virginia office nor does it demonstrate that employees of the Virginia office performed nearly identical job functions to that of Gillum.

information shall be submitted to Gillum subject to the protective order previously entered by the parties in this matter.

Relative to Gillum's request for an award of the reasonable expenses he incurred in bringing his motion to compel, Fed. R. Civ. P. 37(a)(5)(A) provides for an award of expenses, including attorney's fees, only where a motion to compel has been granted in its entirety, which is not the case with the present motion.  Since Gillum's motion will be granted in part and denied in part as set forth above, the reasonable costs and expenses incurred in connection with the motion will instead be apportioned between the parties under Fed. R. Civ. P. 37(a)(5)(C).  Thus, each party will bear its own costs and expenses relative to this motion.

Accordingly;

**IT IS ORDERED** that the Motion to Compel (R. Doc. 31) filed by plaintiff, Thomas Gillum, is hereby **GRANTED IN PART** and **DENIED IN PART** as set forth in the above Ruling.

**IT IS FURTHER ORDERED** that defendant, ICF Emergency Management Services, L.L.C., shall produce, within twenty (20) days of this Order:  (1) all claims/complaints of age discrimination and disparate treatment, (2) asserted by employees of the Small Rental Program and the Homeowner Program of the Louisiana Road Home Program, (3) for the past five (5) years.

**IT IS FURTHER ORDERED** that the claims/complaints produced by ICF shall be subject to the protective order previously entered by the parties to this matter.

**IT IS FURTHER ORDERED** that plaintiff's request for an award of the reasonable

expenses, including attorney's fees, incurred in bringing the present motion shall be **DENIED** and that each party shall bear its own costs and expenses relative to this motion.

Signed in chambers in Baton Rouge, Louisiana, July 16, 2009.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**