## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**THOMAS GILLUM**                                            **CIVIL ACTION**

**VERSUS**

**ICF EMERGENCY MANAGEMENT**                      **NO. 08-314-C-M2**
**SERVICES, L.L.C.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, November 19, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THOMAS GILLUM                                    CIVIL ACTION

VERSUS

ICF EMERGENCY MANAGEMENT                          NO. 08-314-C-M2
SERVICES, L.L.C.

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion for Summary Judgment (R. Doc. 36) filed by the defendant, ICF Emergency Management Services, L.L.C. ("ICF").  The plaintiff, Thomas Gillum ("Gillum"), has filed an opposition (R. Doc. 49) to ICF's motion, in response to which ICF has filed a reply memorandum.  (R. Doc. 51-3).

## FACTS & PROCEDURAL BACKGROUND

This suit arises from Gillum's employment with ICF as a rehabilitation specialist from February 5, 2007 until he resigned on June 4, 2007, effective June 15, 2007.[1]  In this suit, he alleges that ICF implemented and maintained "pay-rate assignments" that resulted in discriminatory compensation based upon age.  He further contends that he was constructively discharged from his employment with ICF because of changes to the job duties for rehabilitation specialists and because his salary was insufficient to cover his living expenses.  He has asserted his claims for age discrimination (disparate treatment) and constructive discharge under the Age Discrimination in Employment Act ("ADEA"), 29

---

[1] Gillum was employed in the Small Rental Program for the Louisiana Road Home Project.  He worked in the Housing Assistance Center located in Slidell, Louisiana.

1

U.S.C. § 621, *et seq.*,[2] and the Louisiana Employment Discrimination Act ("LEDA"), La. R.S. 23:301, *et seq.*  He has also asserted claims for breach of contract,[3] for intentional infliction of emotional distress and for abuse of rights under La. C.C. art. 2315, and for failure to pay overtime pay under Louisiana law and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*  ICF has now filed the present motion for summary judgment, seeking dismissal of Gillum's suit with prejudice on the ground that there are no genuine issues of material fact in dispute as to any of Gillum's claims, and it is therefore entitled to judgment as a matter of law.

## LAW & ANALYSIS

**I.      Summary judgment standard:**

Summary judgment is appropriate where the pleadings, discovery products, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56(c).  A "genuine issue" exists when a reasonable jury could resolve the disputed fact(s) in favor of the non-movant, and a "material" fact is one that might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[4]  Only if the

---

[2] He contends that other rehabilitation specialists were paid more than him because of his age.

[3] As ICF notes in its supporting memorandum, it is somewhat unclear as to whether Gillum is asserting a claim for breach of employment contract.  In his petition, he alleges that he expected to be employed "for a defined period of February 2, 2007 through February 5, 2009" and that he is owed "pay due on his contract of employment for a term."  *See*, Petition, ¶¶ 3, 15.

[4] In reviewing a motion for summary judgment, a court " . . .must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence."  *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133,

nonmoving party sets forth specific facts and evidence supporting the allegations essential to his/her claim will a genuine issue of material fact be found to exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[5]

## II.    Gillum's age discrimination/disparate treatment claim:

Gillum's age discrimination/disparate treatment claim is governed by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Pacovsky v. City of Booneville Mississippi,* 2009 WL 2972092 (5th Cir. 2009).  According to that framework, in order to establish a prima facie case of disparate treatment in compensation, a plaintiff must show that:  (1) he/she is a member of a protected group; (2) he/she was qualified for the position; and (3) he/she suffered an adverse employment action in that he/she was paid a lower salary than "similarly situated" employees. *Taylor v. Seton Brackenridge Hosp.*, 2009 WL 3150256, *3 (5th Cir. 2009); *Dandy v. UPS, Inc.*, 388 F.3d 263, 274 (7th Cir. 2004).[6]  If the employee establishes the elements of his/her prima facie case, the burden of production (not persuasion) shifts to the employer to articulate a legitimate, non-discriminatory reason for the alleged adverse employment

120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

[5] The nonmoving party may not rely upon pleadings, conclusory allegations, unsubstantiated assertions or arguments alone, but instead must come forward with evidence based on personal knowledge that demonstrates the existence of a material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the record taken as a whole does not lead a rational trier of fact to find for the non-moving party, no genuine issue of material fact exists, and the mover is entitled to summary judgment as a matter of law. *Id.*

[6] *Runnels v. Texas Children's Hosp. Select Plan*, 2006 WL 189939, **6 (5th Cir. 2006)("To establish a prima facie case of discrimination regarding compensation, a plaintiff must prove that (1) he is a member of a protected class, and (2) he is paid less than a nonmember for work requiring substantially the same responsibility").

action [or disparate treatment]. *Pacovsky*, at *1. Finally, if the employer meets its burden, the employee must then offer sufficient evidence to raise a genuine issue of material fact as to whether the employer's reasons are false or "unworthy of credence" and, thus, merely a pretext for discrimination. *Id.* The employee retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment action. *Id.*

There is no dispute between the parties in this case that the first two (2) elements of Gillum's prima facie case are satisfied. He was a member of a protected class at the time he was hired by ICF because he was fifty-eight (58) years old. *See*, 29 U.S.C. §631(a)(Under the ADEA, the protected class is limited to persons at least forty (40) years of age or older). Furthermore, ICF has not presented any arguments or evidence indicating that Gillum was unqualified for the position of rehabilitation specialist, and given that Gillum possessed a bachelor's degree, had previously held a real estate license, and had several years of experience in insurance adjusting and construction and that ICF hired him after considering that experience, the Court assumes that he was qualified for the position, which Gillum admits was very similar to that of an insurance adjuster.[7] The parties' only dispute concerns the final discrimination element of the *McDonnell Douglas* analysis, *i.e.*, whether Gillum has produced sufficient summary judgment evidence to raise a genuine issue of material fact that persons "similarly situated" to him were treated more favorably than he was in terms of salary and, if so, whether ICF's reason for such different treatment constitutes pretext.

---

[7] *See*, Gillum's deposition, Exhibit A to his opposition, pp. 47-48, 123 (where Gillum discusses the fact that his prior experience as an insurance adjuster and in construction was relevant to his position of rehabilitation specialist).

According to the U.S. Fifth Circuit Court of Appeals, in order to establish that "similarly situated" employees were treated more favorably than he was, Gillum is required to produce competent evidence that other employees were "treated differently under circumstances 'nearly identical' to his." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005). This, Gillum has failed to do. The only employee that Gillum has contended was "similarly situated" to him, but was nevertheless paid more than him, is Cynthia Blockett ("Ms. Blockett"). See, Gillum's Supplemental Answer to Interrogatory No. 3, Exhibit I to ICF's motion. While it is undisputed that Ms. Blockett was younger than Gillum when she was hired (forty-six (46) years old)[8] and that she was paid a salary of $62,000.00 (the highest of any rehabilitation specialist),[9] which was $12,000.00 more than that earned by Gillum, Gillum has failed to point to any evidence demonstrating that the circumstances under which Ms. Blockett was hired were "nearly identical" to those under which he was hired. In contrast, ICF has come forward with evidence indicating that the reason Ms. Blockett was paid a higher salary than Gillum was because she was more qualified for the rehabilitation specialist position than Gillum was. Specifically, ICF refers to evidence indicating that, at the time of her hire, Ms. Blockett had a certification in lead-based paint and prior experience as a rehabilitation specialist, while Gillum possessed neither of those qualifications.[10] Although Gillum contends that Ms. Blockett's resume does

---

[8] She was still within the protected class, however, since she was over forty (40) years of age.

[9] *See*, Santucci deposition, pp. 186-188.

[10] Vanessa Brower ("Brower"), the Program Manager for ICF's Small Rental Program, testified that the types of qualifications that were important in hiring a rehabilitation specialist included experience in construction, cost-estimating, and the

not reflect that she has prior experience as a rehabilitation specialist, the deposition of Bob Santucci ("Santucci"), the Director and Project Manager for the Road Home Program who was involved in the hiring process of rehabilitation specialists for the Small Rental Program, confirms that Ms. Blockett had that previous experience. *See*, Santucci deposition, Exhibit F to Gillum's opposition, pp. 55,186-87.[11]

Furthermore, Ms. Blockett's resume indicates that she had other prior experience that made her more qualified for the rehabilitation specialist position than Gillum, such as experience as a home inspector, a construction consultant, a HUD inspector, and a FEMA "QC/QA inspector." *See*, Ms. Blockett's resume, R. Doc. 50, under seal, Bates Nos. 144-46. Ms. Blockett also possessed licenses in lead-based paint remodeling and removal and as a HUD inspector and home inspector (including lead based paint and asbestos). *Id.* Since Gillum has not produced any competent evidence indicating that he possessed similar prior experience and licenses, he has not demonstrated that the circumstances under which he was hired are "nearly identical" to those under which Ms. Blockett was hired. As such, he has not shown that Ms. Blockett was "similarly situated" to him at the time she was hired, and the fact that she was paid a higher salary than him therefore does

_____

"steps and risks associated with federal requirements such as le[a]d-based paint or mold."  *See*, Brower deposition, Exhibit C to Gillum's opposition, pp. 26-27.

[11] Santucci testified, in his deposition, that Ms. Blockett was the only candidate for that position who had prior experience as a rehabilitation specialist as well as a license in lead hazard reduction.  *See*, Santucci deposition, pp. 55-56, 187.  He indicated that Ms. Blockett's higher salary was likely due to the fact that she possessed those "two very important things" that the Small Rental Program needed.  *Id.*, pp. 186-87.

not establish a genuine issue of material fact as to whether he was the victim of age discrimination/disparate treatment.

Rather than referring the Court to competent evidence demonstrating that he was treated differently in terms of salary from other "similarly situated" employees, Gillum instead primarily relies upon alleged "statistical evidence" in support of his prima facie case. The Fifth Circuit Court of Appeals, however, has held that an *individual* plaintiff pursuing an *individual* claim of disparate treatment in pay may not rely on the type of pattern-or-practice evidence that is acceptable in class action suits alleging similar conduct, such as general statistical evidence.[12]  Furthermore, even when statistics are considered in age discrimination cases, they are accorded less weight than in other employment discrimination cases because statistics can be "easily manipulated and deceptive" in age discrimination cases since "innumerable groupings of employees are possible according to ages and divisions within the corporate structure."  *Walther v. Lone Star Gas Co.*, 952

---

[12] *See, Taylor v. United Parcel Service, Inc.,* 554 F.3d 510 (5th Cir. 2008)(An individual plaintiff claiming disparate treatment in pay must show that his circumstances are "nearly identical" to those of a better-paid employee who is not a member of the protected class.  In making this showing, an individual plaintiff pursuing an *individual* claim may not rely on the type of pattern-or-practice evidence that is acceptable in class action suits alleging similar conduct, such as general statistical evidence); *Thompson v. Leland Police Dep't,* 633 F.2d 1111, 1114 (5th Cir. 1980)("[S]tatistical evidence alone does not establish or necessarily imply . . . discriminatory practices").

The above-cited Fifth Circuit jurisprudence demonstrates why Gillum's reliance upon *Payne v. Travenol Laboratories*, 673 F.2d 798 (5th Cir. 1982), is inappropriate in this case.  In *Payne*, the plaintiffs in a Title VII disparate treatment *class action* suit were permitted to rely solely upon statistical evidence if it demonstrated a "sufficiently great disparity" in pay.  *Id.*, at 817.  Since the present case is not a class action disparate treatment suit, *Payne* is inapplicable.

F.2d 119, 124 (5th Cir.), *on rehearing*, 977 F.2d 161 (5th Cir. 1992).[13]  Finally, the Fifth

Circuit has noted that, when statistical evidence is considered, that evidence must focus

on "the degree of statistical disparity between protected and non-protected workers."

*Munoz v. Orr*, 200 F.3d 291 (5th Cir. 2000); *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856

(5th Cir. 2002)("Ordinarily, a *prima facie* disparate impact case requires a showing of

substantial 'statistical disparity between protected and non-protected workers in regards

to employment or promotion'").

In the present case, the alleged statistical evidence presented by Gillum consists of

a spreadsheet of the names of all rehabilitation specialists employed by ICF during the

relevant time period, their ages, their annual pay, and their hire dates.  *See,* Exhibit "L" to

Gillum's opposition.  The Court finds that reliance upon such spreadsheet, which contains

only raw data (which was not even prepared and analyzed by an expert), is insufficient to

establish a genuine issue of material fact as to whether Gillum was a victim of disparate

treatment with respect to his salary.[14]  Such evidence does not involve any analysis of the

---

[13] *See, E.E.O.C. v. Texas Instruments, Inc.*, 100 F.3d 1173 (5th Cir. 1996)(expressing skepticism regarding about the ability of statistics to rebut an employer's nondiscriminatory reasons in an age discrimination case and finding that, since the plaintiff's expert had no explanation for his selection of the arbitrary age 50 cutoff other than that was the group the plaintiff asked him to consider, the plaintiff's choice of age groups for statistical review was not probative of age discrimination); *Erwin v. Bank of Mississippi*, 512 F.Supp. 545 (N.D. Miss. 1981); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 820 (5th Cir. 1990); *Rummery v. Illinois Bell Telephone Co.*, 250 F.3d 553, 559 (7th Cir. 2001)(Statistics standing alone are not likely to establish a case of individual disparate treatment.  To establish disparate treatment, the statistics must be accompanied by other evidence).

[14] The Court refers to Gillum's statistical evidence as "alleged statistical evidence" because it has been recognized that raw data concerning the ages and salaries of employees alone, without any further analysis (such as whether those younger employees who were paid more than Gillum were more qualified for their

"statistical disparity between protected and non-protected workers;" instead, it is simply based upon whether employees who were younger than Gillum were paid more than him, regardless of whether those younger employees were within or outside of the protected class.  Specifically, Gillum relies upon the spreadsheet for the proposition that eleven (11) of the fourteen (14) rehabilitation specialists that were employed by ICF during the time period in question were "substantially younger" than him but earned $6,000.00 to $18,000.00 more per year than he did.  He does not refer to any jurisprudence or expert evidence indicating that his arbitrary "substantially younger" standard is acceptable in disparate treatment cases.  *See, Texas Instruments*, at 1185 (the plaintiff's "choice of age groups for statistical review is not probative of age discrimination"); *Overstreet v. Siemens*

---

positions, and thus, not "similarly situated" to him), is "not competent to prove anything." *See, Odom v. Frank*, 3 F.3d 839 (5th Cir. 1993)(Raw data of age, race and location of persons promoted during relevant time period of 1980 to 1983, "without more, is not competent to prove anything" and was not "statistical evidence" because, without analysis, it was simply impossible to determine what the data was supposed to mean, much less to determine that it indicated discrimination); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176-77 (7th Cir. 2002); *Kollintzas v. Pabey*, 2007 WL 4277912 (N.D.Ind. 2007)(The plaintiff's so-called "statistical analysis" consisted merely of a recitation of names, positions, races, and whether they were certified or non-certified employees. Finding that such recitation provided no analysis of the relative qualifications of the employees versus white employees, no discussion of disparate treatment by supervisors, no mention of the applicant pool from which the changes were made, and no accounting for the negative treatment of seemingly equal (if not better) qualified hispanics, the court found the evidence was "next to worthless"); *Beshty v. General Motors*, 327 F.Supp.2d 208 (W.D.N.Y. 2004)(Raw data showing that out of 175 employees that were employed during particular time period, 68 had been age 40 or older, and that 11 of them had been age 50 or older, and that two had been over age 60, was not statistical evidence of age discrimination; there was no evidence that older employees were turned down for jobs or terminated in "disproportionate numbers"); *Weinstock v. Colombia University*, 224 F.3d 33, 46 (2d Cir. 2000)(rejecting contention that "raw data purportedly describing a pattern of under-representation and unequal opportunity for women faculty at Columbia leads to the conclusion that gender discrimination is in play here"); *Hague v. Thompson Distribution Co.*, 436 F.3d 816 (7th Cir. 2006).

*Energy and Automation, Inc.,* 2005 WL 3068792 (W.D. Tex. 2005)(The court would not "engage in the analysis of the employees affected over the age of 50 and ignore the overall effect on the protected class").

Furthermore, when the Court actually examines the protected versus non-protected class groupings (as should be the focus under Fifth Circuit jurisprudence), it does not appear that a significant statistical disparity exists between the salary of Gillum (and others in the protected class) and those outside of the protected class. Of the fourteen (14) rehabilitation specialists employed by ICF during the relevant time period, five (5) of those specialists earned the same amount as Gillum ($50,000.00 per year), and all five (5) of those specialists were within the protected class, *i.e.*, above age 40 years. They were ages 43, 48, 58, 60, and 63. *See,* Kristine Guido declaration, ¶¶9-10, R. Doc. 36-9. Six (6) rehabilitation specialists earned more than Gillum. However, three (3) of the specialists that earned more than him were within the protected class (ages 45, 45, and 47), and three (3) were not (ages 32, 36, and 39). Thus, when considering the rehabilitation specialists that earned higher salaries than Gillum, they were split evenly between those within the protected class and those outside of it. Finally, there were three (3) rehabilitation specialists who earned less than Gillum. Two (2) of those specialists (ages 26 and 39) were employees outside of the protected class, while one (1) of them was within the protected class (age 45), and all three (3) of those individuals were younger than Gillum. Accordingly, when the above statistical information is considered, there does not appear to be a genuine issue of material fact for trial as to whether Gillum was subjected to

disparate treatment in terms of salary when a proper comparison is made between the salaries of those within and outside the protected class.[15]

The only other proof that Gillum relies upon in support of his prima facie case is evidence that, during a meeting, Daniel Holland ("Holland"), ICF's Operations Manager, referred to those rehab specialists who were adjusters as "retirees" and that the older rehab specialists "were retired and didn't need the increase" in salary.  *See,* Deposition of Woodward, Exhibit E to Gillum's opposition, pp. 147-48; Deposition of Gillum, Exhibit A to his opposition, p. 67.   That proof does not create a genuine issue of material fact as to Gillum's age discrimination/disparate treatment claim.  First, there is some question as to whether such comments even constitute admissible evidence.  Mr. Woodward testified, during his deposition, that another employee told him that Holland made the "retiree" comment and that he did not actually hear that remark.  Deposition of Woodward, p. 147. Accordingly, Woodward's testimony concerning that comment would be considered inadmissible hearsay, which cannot serve as competent evidence of age discrimination/disparate treatment.

---

[15] Gillum admits that, under U.S. Supreme Court precedent, for statistical disparities to serve as proof of discrimination, they must be "gross disparities."  *See,* Gillum's opposition, R. Doc. 49-20, p. 13, quoting *Hazelwood School District v. United States*, 433 U.S. 299, 307-308, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977).  "Gross disparities" do not appear to exist in this case between the salaries of rehab specialists within the protected class versus those younger specialists outside the protected class.

*See also, Bennett v. Total Minatome Corp.*, 138 F.3d 1053 (5th Cir. 1998)(Employee failed to raise reasonable inference of age discrimination based upon evidence that, during company restructuring, employer terminated a number of managers over age 40 and promoted several managers under age 40, absent evidence demonstrating that the results of the restructuring were "statistically significant"); *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1291-92 (5th Cir. 1994)(no inference of disparate treatment where disparities not "statistically significant").

Furthermore, even if the above comments are admissible, in order for such stray, age-related remarks to constitute probative evidence of age discrimination, they must be neither vague nor remote in time from the employment action/decision in question, and they must be made by an individual with authority over the employment action/decision at issue. *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 254 (5th Cir. 1996); *Krystek v. University of Southern Mississippi,* 164 F.3d 251, 256 (5th Cir. 1999). Gillum has not produced any competent evidence that the comments allegedly made by Holland were in any way related to or close in time to the determination of his salary. It appears that the comments were made after Gillum's salary had already been set. Moreover, Gillum has not alleged or proven that Holland had any control whatsoever over the setting of his salary. As such, the random comments allegedly made by Holland are insufficient to establish age discrimination.[16]

Since the only evidence Gillum has presented (arbitrary statistical information and random age-related comments) does not establish a genuine issue of material fact as to

---

[16] *See, Turner v. North Am. Rubber, Inc.*, 979 F.2d 55 , 59 (5th Cir. 1992)(comment that plaintiff was being sent "three young tigers" to assist with operations was insufficient to show discrimination because the comments were vague and too remote in time); *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993)(statement that a younger person could do faster work and reference to plaintiff as an "old fart" was insufficient to establish discrimination); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 378-79 (5th Cir. 1991), *cert. denied*, 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992)(outgoing president's comment that the new president "need[ed] to surround himself with people his age" was insufficient to establish discrimination); *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 565 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984)(employer's statement that he wanted "new blood" and a "lean and mean team" did not show age discrimination); *Haskall v. Kaman Corp.*, 743 F.2d 113 (2nd Cir. 1984)(holding that it was error for the district court to admit into evidence a reference made by the president of a company to some younger employees as "young turks" because it was not relevant to whether the terminated employee was fired because of his age).

whether ICF employees "similarly situated" to him were treated more favorably than him in terms of salary, the Court finds that Gillum has failed to demonstrate that he will be able to establish a prima facie case of age discrimination/disparate treatment at trial.[17] [18]  As such, his age discrimination/disparate treatment claim should be dismissed with prejudice.[19]

---

[17] As an additional matter, the Court notes that Gillum actually agreed to the $50,000.00 salary he was paid.  His discrimination claim carries even less weight when that factor is considered.

[18] Gillum makes much of the fact that Santucci and Denise Maxwell (the Human Resources recruiter employed by ICF that conducted Gillum's job interview) allegedly told him that no rehabilitation specialist was paid a salary of more than $50,000.00 a year, and the evidence indicates that several rehabilitation specialists were, in fact, paid more than that amount.  Even if Santucci and Brower made that representation and it was incorrect, that fact, on its own, does not lead to an inference of age discrimination since Gillum has not produced any other evidence indicating that the rehabilitation specialists who were, in fact, paid more than $50,000.00 were both younger than him and "similarly situated" to him in terms of qualifications at the time they were hired.

Furthermore, Santucci specifically testified that, during the time period in question, he was not familiar with the specific salaries of the rehabilitation specialists that were hired.  *See*, Santucci's deposition, pp. 186-187. He was familiar with the "general range of pay" for rehabilitation specialists as a classification (which was apparently around $50,000.00), but he was "surprised" when he later found out that there was a rehabilitation specialist making a salary outside that range (Ms. Blockett).  *Id.*  He, however, indicated that such higher salary "probably resulted from [his] directions to Human Resources to say, here's our first rehab specialist, she also has a W.E.D. license in the State of Louisiana. Those are two very important things that we need, hire her." *Id.*  Accordingly, even assuming Santucci told Gillum that rehabilitation specialists were not paid more than $50,000.00, that statement does not appear to have been an intentional misrepresentation on his part that would suggest age discrimination since Santucci did not even know that Ms. Blockett was making $62,000.00 a year, and he apparently believes that her higher salary was justified based upon her greater qualifications for the position.

[19] Since the Court finds that Gillum has failed to establish his prima facie case of age discrimination/disparate treatment, it need not examine whether ICF has articulated a legitimate, non-discriminatory reason for the alleged discrimination/disparate treatment and whether such reason constitutes pretext.

### III.    Gillum's constructive discharge claim:

To establish a constructive discharge claim, an employee "must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Stover v. Hattiesburg Public School Dist.*, 549 F.3d 985 (5th Cir. 2008).  This objective test has been referred to as the "reasonable employee test." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004).  The evidence must demonstrate "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."  *Stover*, at 991, quoting *Landgraf v. USI Film Prods.,* 968 F.2d 427, 430 (5th Cir. 1992).  Jurisprudence addressing constructive discharge claims generally focuses on two elements: (1) the employer's intentional conduct; and (2) the intolerable level of the work conditions.  *Petrosino v. Bell*, 385 F.3d 210 , 229 (2d. Cir. 2004). The Fifth Circuit has considered the relevancy of the following events in determining whether a reasonable employee would feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to cause the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer w[as] accepted or not.

*Stover*, at 991, quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771-72 (5th Cir. 2001).  Even if a plaintiff raises a genuine issue of material fact as to whether or not a demotion constitutes a "step down in prestige and responsibility," that falls far short of demonstrating that work conditions are "so intolerable as to compel resignation." *Petrosino*, at 229.

14

Gillum conceded during his deposition that his salary was never reduced by ICF, that he was not asked to resign, that he was not badgered or harassed by ICF employees, and that he was not offered early retirement. *See*, Gillum's deposition, p. 238, 240-241. Thus, he cannot rely upon any of those events in support of his constructive discharge claim. Instead, he contends that he was constructively discharged because, "[a]t the end of May 2007, ICF changed [his] job duties from rehab specialist to 'homeowner counselor'." *See*, Gillum's opposition, R. Doc. 49-20, p. 21. He contends that ICF's Change Control Board, the LRA, and the Office of Community Development "allegedly made, approved and implemented policy decisions and strategies to eliminate the rehabilitation specialists positions and replace them with 'independent contractors'." *Id.* Gillum further contends that such changes in job duties did not affect all of the rehabilitation specialists the same, regardless of their age. For example, he refers to the deposition testimony of Mr. Faulkner and Mr. Woodward indicating that Ronald Ritchey, a rehabilitation specialist who was younger than Gillum, continued to have field assignments (at least two to four) after the rehab specialists were told that their duties were being changed. *Id.*, p. 22, citing Faulkner deposition, Vol. 2, Exhibit O to plaintiff's opposition, p. 84, and Woodward deposition, Exhibit E to plaintiff's opposition, pp. 89, 157, 163, 182-83. Finally, Gillum asserts that he was constructively discharged because of his alleged disparate salary, and the fact that he did not receive a 90-day evaluation and pay increases, as purportedly promised to him. He therefore asserts that he was "financially forced to resign." *Id.*

As to Gillum's contention that the change in his job duties is sufficient to support a claim of constructive discharge, the Court finds that such contention fails because neither element of the constructive discharge analysis has been proven. First, Gillum has not

15

presented any evidence indicating that the change in the job duties of rehabilitation specialists was *intended* by ICF to get him to resign.  In fact, he admitted, during his deposition, that, although he "possibly thought" that the change in job responsibilities was designed to get him to resign, he has no proof in that regard.  *See*, Gillum's deposition, pp. 241-242.  Furthermore, based upon the deposition testimony of Vanessa Brower, it appears that such decision was made, not by ICF 's Change Control Board, as Gillum contends, but instead by the State, through the LRA and OCD.[20]

---

[20] Ms. Brower's deposition testimony indicates that the purpose of ICF's Change Control Board was to "manage change of review actions and direction from the state." *See*, Brower deposition, Vol. 2, Exhibit D to ICF's motion, p. 60.  She specifically testified that, in the late winter/early spring of 2007, "the state made the decision that the subcontractor would do all cost estimating for the Small Rental Program."  *See,* Brower deposition, Vol. 1, Exhibit E to ICF's motion, p. 166; Vol. 2, p. 31-32 ("LRA and OCD made policy decisions and implementation strategies . . . And then OCD says, and those [cost estimating] activities will be conducted by the independent contractors").

*See also*, the following exchange during Ms. Brower's deposition:

Q.   Well, did the LRA and OCD in any way review any type of proposals about the positions with regards to rehab specialists that you know?

A.   Not that I'm aware of, no.

****

Q.   [W]ho made the decision that the contractors would do cost estimation?

A.   That would be OCD as an implementation model.

Q.   [] was it a decision that they made, ICF, you have to [do] this or was it a recommendation?

A.   Change control is a decision.  It's not often that OCD would make recommendations; they were our client; they made decisions.

16

Secondly, Gillum has conceded that he resigned before he even experienced any change in his job duties as a result of ICF's actions.  According to Gillum's allegations, the alleged decision to change the job duties of rehab specialists occurred in late May 2007, and Gillum resigned only days later on June 4, 2007.  He admitted during his deposition that, at the time of his resignation, the job duties of rehab specialists had not yet changed and that he "wasn't going to stick around to find out" what his new job responsibilities were going to be.  *See*, Gillum's deposition, p. 241.  The Fifth Circuit has repeatedly recognized that "part of an employee's obligation to be *reasonable* [in relation to a constructive discharge claim] is an obligation not to assume the worst, and not to jump to conclusions too fast."  *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987).[21]  Since Gillum resigned before he even experienced an actual change in his job duties and without allowing ICF notice and an opportunity to resolve any working conditions that he might have considered intolerable, the Court cannot find that sufficient evidence exists that a reasonable person in Gillum's shoes would have felt compelled to resign.  *See, Aryain,* at 481-82.  Additionally, Gillum has not, in any way, alleged or proven how the changes that were made to the job duties of rehabilitation specialists (one of which allegedly included no

---

*Id.*, pp. 32, 59 [Emphasis added].

[21] *See, Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473 (5th Cir. 2008)(where the plaintiff resigned just twenty days after being transferred to a different department, the Fifth Circuit found that she had "assumed the worst" and had made no effort (through complaints or otherwise) to allow her employer to remedy the problems she identified.  While the plaintiff may have subjectively felt that resignation was her only viable option, the Fifth Circuit held that her working conditions were not so intolerable as to compel a reasonable person to resign, and her constructive discharge claim therefore failed); *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 652 (5th Cir. 2004)(noting that a reasonable employee often should pursue less drastic options before choosing to leave her job).

longer being able to handle field assignments) were sufficiently severe and pervasive to exceed the minimum level of proof required for a hostile work environment claim, as is necessary to sustain his constructive discharge claim under Fifth Circuit jurisprudence.

Furthermore, it has been recognized that arguments concerning disparate salary and a failure to receive a promised salary increase or benefits package, like those asserted by Gillum, do not constitute sufficient evidence of intolerable conditions that would make a reasonable employee feel compelled to resign. *See*, *Frost v. Chromalloy Aerospace Technology Corp.*, 697 F.Supp. 82 (D.Conn. 1988)(where the plaintiff resigned and sued her employer for constructive discharge because of her disappointment over not receiving an allegedly promised salary increase and benefits package, which would have made her salary and benefits equal to those of her male predecessor and counterparts.  The court found that, while the plaintiff may have been upset and frustrated about the fact that she was not receiving the same salary and benefits as her male counterparts, she had not produced any evidence to suggest that a reasonable person would have considered such circumstances to have been so intolerable and to have been so deliberate on the part of her employer to constitute a constructive discharge.  The court cited case law indicating the "weakness of plaintiff's claim"); *Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61, 66 (5th Cir. 1980) (Female employee's resignation due to receiving lower pay than that paid to male employees performing the same job did not constitute a constructive discharge); *Stover*, at 991 (where an employee contended that she was "not paid appropriately" and she was disgruntled because a high-level administrator was provided greater benefits than she was, but she did not present any evidence that she had actually experienced a reduction in salary or that she was demoted, reassigned to menial or

18

degrading work, or offered early retirement, summary judgment was granted in her former employer's favor on her constructive discharge claim).

Additionally, as ICF points out, Gillum has not presented any competent evidence indicating that, if he had received the alleged 90-day evaluation, he would have received a salary increase or that he ever requested and was intentionally denied a pay increase by ICF in hopes that it could compel him to resign.  Under the circumstances, the Court cannot find that Gillum has come forward with adequate evidence and jurisprudential support for his contention that his purportedly disparate salary and the alleged denial of evaluations and a pay increase are sufficiently intolerable conditions that they would have compelled a reasonable employee to resign.  Accordingly, Gillum's constructive discharge claim should also be dismissed.

**IV.   Gillum's claims for breach of contract, intentional infliction of emotional distress, abuse of rights, and under the FLSA:**

The Court agrees with ICF that Gillum has failed to present sufficient arguments and evidence in his opposition to create a genuine issue of material fact for trial relative to his breach of contract, intentional infliction of emotional distress, abuse of rights, and FLSA claims and that those claims should therefore also be dismissed.

**(A)    Breach of contract claim:**

Gillum completely failed to address in his opposition any claim he may be asserting for breach of an employment contract.  While he made passing reference in his opposition to the fact that he was informed during his interview with ICF that he was being hired for a minimum of three (3) years and that Mr. Santucci made "several representations" after he was hired that the job would last up to ten (10) years, Gillum has failed to refer the Court

19

to any competent evidence substantiating those assertions.  He has never produced a written contract of employment indicating a specified term for which he was to be employed.  Furthermore, the following facts are undisputed:  that Gillum's offer letter from ICF indicated that his employment was "at will;" that Gillum was aware that he was being hired pursuant to ICF's contract with the State and that, if that contract ended, his employment would end; that no ICF employee working on the Road Home Program had a contract of employment; and that Gillum received a copy of the ICF Employee Handbook, which advises that employment with ICF is "at will" and that "[n]o commitment by an agent, employee, or officer of ICF International, either written or oral, for employment for any specified duration, including lifetime employment, shall be valid or binding on the Company unless approved by an executive officer of ICF International."  *See,* Gillum's deposition, p. 35-36, 143-145, 169-170; 228; Deposition of Scott Morris, attached to ICF's motion as Exhibit H, pp. 62-63.  It is also undisputed that Gillum has not produced any evidence that an executive officer of ICF ever approved a change of his "at will" employment to employment for a specified term.  Mr. Santucci was not even an ICF employee, much less an executive officer of that company who could approve such a change to Gillum's employment.[22]

Considering the above undisputed facts, any oral statements that may have been made to Gillum during his hiring interview or by Mr. Santucci concerning the potential length of his employment with ICF or how long ICF's contract with the State would last simply do

---

[22] Santucci testified, during his deposition, that, during the relevant time period, he worked for a company that had a subcontract with ICF to provide technical and consulting services.  *See*, Santucci deposition, pp. 26-27.

not create a genuine issue of material fact as to whether an oral contract of employment for a specified term existed.   Under Louisiana law, any ambiguity as to whether employment is for a fixed term is construed in favor of employment at will, and unless there is a specific contract or agreement establishing employment for a fixed term, an employee is considered employed "at will," such that he is free to resign at any time without liability, and the employer is free to discharge him at any time provided the termination does not violate a statutory or constitutional provision.  *See,* La. C.C. art. 2747; *Brannon v. Wyeth Laboratories*, 526 So.2d 1101, 1104 (La. 1988); *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 429 (5th Cir. 1996).  "[F]or a mandatory term employment contract to exist, the parties [must] have clearly agreed to be bound for a certain period of time during which the employee is not free to depart without assigning cause and the employer is not free to depart without giving reason." *Daybrook Fisheries, Inc. v. Ketnor*, 01-0388 (La. App. 4. Cir. 1/22/03), 839 So.2d 223, 225.  Since Gillum has not produced any evidence indicating that he had a clear agreement with ICF that he was to be employed for a fixed period of time, there is no genuine issue of material fact as to whether ICF breached that contract, and any claim for breach of employment contract should therefore be dismissed.

**(B)   Intentional infliction of emotional distress claim:**

As to Gillum's claim for intentional infliction of emotional distress, the Court finds that it should be dismissed because Gillum has not produced sufficient evidence of conduct meeting the standard required for such a claim.[23]  Under Louisiana law, to establish a claim

---

[23] Although ICF relies upon *Gluck v. Casino America, Inc.*, 20 F.Supp.2d 991 (W.D.La. 1998) for the contention that Gillum's claims for intentional infliction of emotional distress and abuse of rights brought pursuant to La. C.C. art. 2315 should be dismissed because they are based upon the same conduct on the part of ICF as his

for intentional infliction of emotional distress, a plaintiff must prove:  (1) that the conduct of the defendant was "extreme and outrageous;" (2) that the emotional distress suffered by the plaintiff was "severe;" and (3) that the defendant "desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."  *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).  Gillum testified in his deposition that his alleged emotional distress primarily resulted from his "need to make a living" and the fact that "ICF did not afford him this opportunity."  Thus, the conduct on the part of ICF upon which Gillum's emotional distress claim is based is simply

———————————————

ADEA and LDEA claims (*i.e.*, age discrimination/disparate treatment and constructive discharge claims), the Court disagrees.  This Court has previously held that the fact that a legally recognized tort claim, such as an intentional infliction of emotional distress claim, "emanate[s] from the same set of operative facts [as an employment discrimination claim] does not in any way diminish the plaintiff's right to recover for the separate tort."  *See, Escousse v. State Farm Mut. Auto. Ins. Co.*, 2000 WL 1298813, *1- *2 (M.D.La. 2000)(Citations omitted)("In *Gluck*, the plaintiff had asserted both an ADEA claim and a claim under Louisiana's general tort law for wrongful termination.  The court dismissed the plaintiff's general tort claim, holding that his remedies were limited to those available under the more specific Louisiana Age Discrimination in Employment Act.  Unlike the tort claim in *Gluck*, Escousse has alleged that the defendant is liable under article 2315 for intentional infliction of emotional distress.  The elements of intentional infliction of emotional distress are altogether different from the elements of proof required under the state and federal anti-discrimination statutes.  The court declines to read *Gluck* so broadly as to extinguish the right to bring a claim for intentional infliction of emotional distress any time there is an allegation of employment discrimination.  The two claims are separate and distinct.  The fact that, in this case, both causes of action emanate from the same set of operative facts does not in any way diminish plaintiff's right to recover for the separate tort of intentional infliction of emotional distress").  Since Gillum has not simply alleged a general tort law claim for employment discrimination under La.C.C. art. 2315 but has instead alleged specific, legally recognized torts for intentional infliction of emotional distress and abuse of rights brought pursuant to Article 2315, those claims are not preempted.  *See, Gluck,* at 995 (An employee may state a claim against an employer under Louisiana general tort statute by alleging the breach of a legally recognized duty, such as the prohibition against intentional infliction of emotional distress, for which the state legislature has not specifically provided a remedial scheme).

the fact that ICF did not pay him a higher salary.  However, as discussed above, the evidence indicates that Gillum agreed to the $50,000.00 salary he received.  Moreover, the setting of an employee's salary, even if not as high as other employees performing the same work, on its own, does not appear to be the kind of "extreme and outrageous" conduct that would support a claim for intentional infliction of emotional distress.

The Louisiana Supreme Court explained, in *White v. Monsanto Co.*, that, for conduct to be actionable for intentional infliction of emotional distress, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id.*  "Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.  Not every verbal encounter may be converted into a tort; on the contrary, some safety valve must be left through which irascible tempers may blow off relatively harmless steam."  *Id.*  Gillum has not pointed to any jurisprudence or evidence indicating that the setting of his alleged disparate salary is conduct sufficient, on its own, to meet the high standard set forth by the Louisiana Supreme Court in *Monsanto*.[24]

---

[24] In contrast, ICF has pointed to jurisprudence wherein discriminatory conduct more severe than that alleged by Gillum was deemed not to constitute extreme and outrageous conduct for purposes of an intentional infliction of emotional distress claim. *See, Labove v. Raftery*, 00-1394 (La. 11/28/01), 802 So.2d 566 (where it was held that an employer's treatment of an employee in demoting him, changing his job duties and engaging in other harassing conduct was not sufficient to sustain a claim of intentional infliction of emotional distress and explaining that an employer must be given "reasonable latitude" in making employment decisions).

Although Gillum contends that ICF's conduct was a "slap in the face" to him and that Mr. Santucci allegedly stated that he was "surprised" by the pay disparity, such statements alone do not indicate that the conduct of ICF in setting Gillum's allegedly disparate salary was so "extreme and outrageous" as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Additionally, the fact that Gillum may have been referred to as a "retiree" by Daniel Holland, ICF's Operations Manager, even if inconsiderate or unkind, simply constitutes the type of petty comment or annoyance that does not lead to liability for intentional infliction of emotional distress.

Moreover, although Gillum contends that, after he returned home from his employment with ICF, he was diagnosed with diabetes, he has not produced any evidence linking that medical condition to the alleged stress he suffered while working for ICF and indicating that such diagnosis was not brought about by other causes, such as diet and weight.  Additionally, he has not produced any evidence, such as medical records from health care providers, indicating that he saw any health care providers in connection with the emotional distress he allegedly suffered as a result of ICF's conduct.  Finally, Gillum has failed to allege or prove that any employee of ICF *intended* to inflict severe emotional distress upon him or *was certain or substantially certain* that such distress would result from his/her conduct.  Accordingly, Gillum's intentional infliction of emotional distress claim should be dismissed.

**(C)    Abuse of rights claim:**

A plaintiff may recover under Louisiana's "abuse of rights" doctrine if one of the following conditions is met:  (1) rights were exercised for the exclusive or predominant

24

purpose of harming another; (2) rights were exercised in the absence of a serious and legitimate interest that is worthy of judicial protection; (3) rights were used in violation of moral rules, good faith, or elementary fairness; or (4) rights were exercised for a purpose other than that for which they were granted.  *Illinois Cent. Gulf R.R. v. International Harvester Co.,* 368 So.2d 1009 (La. 1979); *Escousse*, at *6-*7; *Deus v. Allstate Ins. Co.,* 15 F.3d 506 (5th Cir. 1994).   In support of his abuse of rights claim, Gillum simply "incorporates his previous arguments . . . that ICF's reasons for his pay disparity are all pretextual" and that there was "no serious, legitimate, or nondiscriminatory reason" for ICF's actions.

This Court has previously recognized that there is no jurisprudential support for applying the abuse of rights doctrine in a case alleging that an employer abused its rights in setting work conditions, such as the setting of an employee's salary, changing his/her job duties, or constructive discharge, as is alleged in the present case.  *See, Escousse*, at *2; *See also, Howard v. Town of Jonesville*, 935 F.Supp. 855, 862 (W.D.La. 1996)(dismissing abuse of rights claim where plaintiff alleged that her working conditions were made intolerable and that she had been constructively discharged).  Such doctrine is typically applied in cases implicating contractual or property rights.  *Id.*  Since Gillum has implicated no contractual or property rights in this case and has not referred the Court to any legal support for the application of the abuse of rights doctrine to his claims of disparate treatment in the setting of his salary, this claim should also be dismissed.

**(D)    FLSA claim:**

In its present motion, ICF contends that Gillum's claim for overtime wages brought pursuant to the FLSA should be dismissed because Gillum and all other rehabilitation

specialists employed by ICF were properly classified as exempt from overtime wages under the FLSA.  Gillum did not refute that argument in his opposition, and because the Court finds that ICF's argument has merit, Gillum's FLSA claim for overtime wages should be dismissed with prejudice.[25]

The FLSA establishes the general rule that all employees must receive overtime compensation for hours worked in excess of forty (40) hours during a seven (7) day workweek.  29 U.S.C. §207(a)(1).  Employees are entitled to overtime compensation according to the general rules unless the employer proves that one of many exemptions applies.  *Vela v. City of Houston*, 276 F.3d 659 (5th Cir. 2001).  One of those exemptions relates to payment of overtime wages to employees working in a "bona fide executive, administrative or professional capacity."  *York v. City of Wichita Falls, Tex.,* 944 F.2d 236, 241 (5th Cir. 1999), citing 29 U.S.C. §213(a)(1).[26]  Employers who invoke the "administrative" exemption to the FLSA's overtime pay requirement must establish that

---

[25] Although Gillum has also asserted a claim for overtime pay under the Louisiana Wage Act, such claim should be dismissed because the payment of overtime wages is "clearly governed by the FLSA."  *Odom v. Respiratory Care, Inc.,* 98-0263 (La. App. 1 Cir. 2/19/99), 754 So.2d 252, 256; *Smith v. Diamond Offshore Management Co.*, 2003 U.S. Dist. LEXIS 23345 (E.D.La. 12/23/2003)(dismissing a state law claim for overtime wages because "Louisiana law does not mandate payment of *overtime* wages")(Emphasis in original).  Gillum does not oppose the dismissal of his state law claims for overtime pay in his opposition memorandum.

[26] Although FLSA exemptions are narrowly construed, courts have nevertheless found that they can serve as a basis for granting summary judgment on claims brought for overtime wages under the FLSA.  *See, Adams v. Detroit Tigers, Inc.*, 961 F.Supp. 176 (E.D. Mich. 1997)(granting summary judgment on the issue of whether professional baseball team was exempt from the Michigan minimum wage law and the overtime provisions of the FLSA); *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d590 (11th Cir. 1995)(granting summary judgment in employer's favor on issue of whether it was an "amusement or recreational establishment" within the meaning of the FLSA exemption).

employees whom they argue are exempt from entitlement to overtime pay earn over $455 per week and both: (1) have as their primary duty the performance of office or non-manual work directly related to management or general business operations of the employer or the employer's customers; and (2) exercise discretion and independent judgment with respect to matters of significance in performing that primary duty.  *Ruggeri v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 585 F.Supp.2d 254 (D.Conn. 2008).  Considering that Gillum earned a salary of $50,000.00 per year while employed by ICF, the "salary" requirement of the administrative exemption is certainly satisfied since that amount breaks down to $961.54 per week, which is more than double the $455.00 per week minimum.

Furthermore, ICF has established that the "primary duties" requirement is satisfied, and Gillum has not come forward with any evidence or legal argument refuting that assertion.  According to 29 C.F.R. §541.201(b), "work directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . budgeting, auditing, insurance, quality control, purchasing, procurement, . . . research, safety and health, public relations, . . . and similar activities."   29 C.F.R. §541.201(b).   Additionally, employees who act as "advisors or consultants to their employer's clients or customers . . . may be exempt."   29 C.F.R. §541.201(c).   The evidence indicates that Gillum's primary duties as a rehabilitation specialist were to perform cost estimates on damaged property and to advise Small Rental Program applicants on the reconstruction/construction process.  The Court agrees with ICF that such activities were directly related to the Small Rental Program's general business operations and the needs of that program's clients or applicants.   In performing cost estimates and advising

27

applicants, Gillum was required to exercise independent judgment and discretion, thereby satisfying the other requirement of the "administrative" exemption.

In addition, Gillum testified in his deposition that the position of rehabilitation specialist is very similar to that of an insurance adjuster. *See*, Gillum deposition, pp. 47-48. In 2004, the Secretary of Labor issued a comprehensive set of new regulations addressing the scope of the FLSA exemptions, which includes a list of examples of jobs that generally satisfy the "duties requirements" for administrative employees. *Roe-Midgettv. CC Services, Inc.,* 512 F.3d 865 (7th Cir. 2008), citing 29 C.F.R. §541.203 (2006). Included within that list are "insurance claims adjusters . . . if their duties include activities such as interviewing insureds, witnesses, and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation." *Id.* As a rehabilitation specialist, Gillum performed several of those duties – interviewing applicants, inspecting property damage, reviewing factual information to prepare cost estimates, evaluating and making recommendations concerning construction/reconstruction options, etc.[27] It is not

---

[27] ICF contends that Gillum exercised even more independent judgment and discretion than the typical insurance adjuster in that he worked with property owners "from start to finish by providing cost-estimates, identif[ying] products to fix the damage, over[seeing] construction, and compl[ying] with government regulations, such as permitting requirements." *See*, ICF's memorandum in support of motion for summary judgment, R. Doc. 36-3, p. 17, citing Santucci deposition, pp. 173-74, 181-185; Faulker deposition, pp. Vol. 2, Exhibit C to ICF's motion, pp. 110-11; Gillum deposition, pp. 47-48, 144, 190-91. ICF further notes that such activities were performed by Gillum relative to actual applications for Road Home Program funds made by Small Rental Program applicants, not simply as a training exercise. *Id.,* Gillum deposition, pp. 192-93.

necessary that the adjuster perform each of the listed activities in order to be subject to the exemption.  69 Fed. Reg. at 22144 ("541.203 identifies the typical duties of an exempt claims adjuster").

Finally, as ICF points out, the fact that Gillum may have used computer software or a manual to assist him in preparing damage estimates, rather than solely his own independent judgment and discretion, does not render the administrative exemption inapplicable.  *See, Roe-Midgett,* at 875 (An insurance adjuster's use of computer software did not itself imply a lack of independent judgment or discretion, so as to preclude the adjuster from falling within the FLSA's administrative exemption); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 375 (7th Cir. 2005); *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litigation,* 481 F.3d 1119, 1130 (9th Cir. 2007)*; Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006).  Adjusting manuals and software are often viewed as "tools that channel rather than eliminate [the adjuster's] discretion."  *Roe-Midgett*, at 875; *Kennedy*, at 374.  For all of the above reasons, which have not even been addressed by Gillum in his opposition, much less refuted, ICF properly classified the position of rehabilitation specialist as exempt from the overtime pay requirements of the FLSA, and Gillum's FLSA claim should therefore be dismissed.

**RECOMMENDATION**

It is recommended that the Motion for Summary Judgment (R. Doc. 36) filed by the defendant, ICF Emergency Management Services, L.L.C., should be **GRANTED** and that this suit be **DISMISSED WITH PREJUDICE** and **AT PLAINTIFF'S COST**.

Signed in chambers in Baton Rouge, Louisiana, November 19, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**